**IN THE COURT OF APPEALS OF IOWA**

No. 18-2025
Filed August 21, 2019

**IN RE THE MARRIAGE OF KRISTEN GRCHAN
AND MICHAEL GRCHAN**

**Upon the Petition of
KRISTEN GRCHAN,**
        Petitioner-Appellant,

**And Concerning
MICHAEL GRCHAN,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Scott County, John D. Telleen,

Judge.

        Kristen Grchan appeals from the decree dissolving her marriage to Michael

Grchan. **AFFIRMED.**

        JohnPatrick Brown III of Winstein, Kavensky & Cunningham, LLC, Rock

Island, Illinois, for appellant.

        Garth M. Carlson of Gomez May, LLP, Davenport, for appellee.

        Considered by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**VAITHESWARAN, Presiding Judge.**

Michael and Kristen Grchan married in 2011 and divorced in 2018. The district court granted the parents joint physical care of their two children, born in 2013 and 2016. On appeal, Kristen contends the court should have granted her physical care.

"Any consideration of joint physical care . . . must . . . be based on Iowa's traditional and statutorily required child custody standard—the best interest of the child." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007) (citing Iowa Code § 598.41(5)(a) [(2018)]). "[T]he factors listed [in section 598.41(3)] as well as other facts and circumstances are relevant in determining whether joint physical care is in the best interest of the child." *Id.* at 696.

The district court observed,

> The evidence in this case demonstrated clearly that both parties are very good parents who deeply love their children and provide excellent care. Neither put forth convincing evidence that their parenting skills are better . . . . Each party had rather mild and insignificant criticisms of the other, and that is to their credit.

In its verbal findings following trial, the court found "both parties [were] heavily involved in providing for the primary care of the children"; "the evidence indicate[d] strongly that they communicate and show mutual respect"; and they exchanged all the information they needed to "to successfully co-parent." The court stated, "There was absolutely [no] history that either parent has run down, criticized the other, [or] insulted the other" and "the degree of conflict between the parties [was] minimal." In particular, the court said there was "absolutely no disagreement about food, shelter, education, moral issues or discipline" and no "evidence whatsoever that" the parents disagreed "as to their general approach to daily matters." Indeed,

the court noted, the parents "continued to live together" after the dissolution petition was filed and "even went on vacation together as a family after the divorce was on file." The record fully supports the district court's findings.

Contrary to Kristen's assertion that she, rather than Michael, "perform[ed] the vast majority of the parenting tasks," her sister testified "they both contributed" and they "kept co-parenting" while the dissolution action was pending. Kristen's father similarly stated "they were both involved," with Michael "giving the kids baths" and "cook[ing] supper." Notably, both parents worked for the same employer and both testified to having flexible schedules that allowed for active parenting.

Kristen's assertion that she would "provide[] a more structured and stable environment" is equally unpersuasive. After living with Kristen for a period of time following her filing of the dissolution petition, Michael moved to his mother's condominium. Later, he rented an Illinois apartment that Kristen conceded was just a fifteen to twenty minute drive away from her Bettendorf apartment. Despite the proximity, Michael expressed a willingness to move even closer. With the older child slated to begin kindergarten, he voiced no objection to having the child attend a Bettendorf, Iowa school as Kristen requested. He stated, "[I]t doesn't matter where she goes to school just as long as we're there for her." He insisted he "just want[s] what's best for [his] kids."

Nor does the record establish that Michael was unable to manage "both [girls] together," as Kristen contends. Both parents candidly admitted parenting the young children could be overwhelming at times. At the same time, Kristen conceded Michael cared for the children without incident while she was on vacation

for several days. In addition, both parents had family members in the area to assist as needed.

We turn to Kristen's contention that the parents had "trouble communicating effectively." Although the parents had different communication styles, there is no evidence to suggest that Michael purposely withheld information about the children. At worst, he declined to take "the lead" on day-to-day decisions. Nonetheless, he participated in the "majority" or "all" of the decisions. In the district court's words, "These are obviously people that can get along."

On our de novo review, we conclude the district court acted equitably in granting the parents joint physical care of the children. In our view, "[t]his is a textbook case for joint physical care." *See Eisener v. Cochran*, No. 12-1647, 2013 WL 3871088, at *2 (Iowa Ct. App. July 24, 2013).

The only remaining issue relates to the parenting schedule. The district court stated Michael would have the children every Monday and Wednesday overnight and every other weekend and Kristen would have the children every Tuesday and Thursday overnight and every other weekend. Kristen argues the transfer schedule will prove unworkable as the children get older. We have no way of knowing. What we do know is that Kristen rejected Michael's alternate "week on–week off" proposal. Given both parents' willingness to accommodate each other, we affirm the arrangement ordered by the district court.

**AFFIRMED.**